UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANNE SMITH and DOUGLAS SMITH, husband and wife, and DOUGLAS SMITH as attorney-in-fact for BETHEL REECE,<br><br>Plaintiffs,<br><br>v.<br><br>CHERYL E. SMITH and JOHN DOES 1–10,<br><br>Defendants. | CASE NO. C18-5646 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND |

This matter comes before the Court on Defendant Cheryl E. Smith's ("Cheryl")[1] motion to dismiss. Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

---

[1] To avoid confusion, the Court will refer to parties by their first names.

# I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Bethel Reece ("Bethel") is a 101-year-old woman. Dkt. 12 at 6. Bethel has lived in a house located at 295 Sylvan Way in Bremerton, Washington ("the property") for more than 50 years. Dkt. 1, ¶ 17.[2] The dispute in this case stems from a series of events beginning fifteen years after Bethel's children began helping her manage her assets.

In August 1999, Bethel appointed her daughter Cheryl and her son Douglas Smith ("Douglas") as her attorneys-in-fact through a Joint Durable Power of Attorney. *Id.*, ¶ 14. In September 1999, Cheryl and Douglas, as Bethel's attorneys-in-fact, conveyed the property to themselves as joint tenants. *Id.*, ¶ 15. At this time, Cheryl, Douglas, and Douglas's wife Joanne Smith ("Joanne") agreed that Bethel would always reside at the property and would pay the insurance and real estate taxes. *Id.*, ¶ 18.

In 2006, Douglas sent a letter to Cheryl documenting the agreement between himself, Joanne, and Cheryl to "ensure for the care of Bethel Reece, to ensure she could live on [the property], and to ensure her former and current properties take care of her needs." *Id.*, ¶ 19. Douglas also conveyed his interest in the property to the martial community of himself and Joanne. *Id.*, ¶ 21.

On August 6, 2015, Cheryl changed the addressee and mailing address for financial statements regarding Certificates of Deposit Bethel held with State Farm, from Bethel at the property, to Cheryl at 9235 Illahee Road NE in Bremerton, Washington. *Id.*,

---

[2] Allegations in the complaint are taken as true when considering this motion to dismiss. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).

¶¶ 25–27. On August 7, Cheryl transferred $30,524.10 from Bethel's Certificate of Deposit account at State Farm to Cheryl's own account at Chase Bank. *Id.*, ¶ 31.

Prior to August 19, 2015, Cheryl removed a one-carat diamond from Bethel's wedding ring, replaced it with a fake diamond, and had the real diamond reset for herself. *Id.*, ¶¶ 35–36. Cheryl then went to Panama. *Id.*, ¶ 38.

On August 25, 2015, Bethel appointed Douglas her sole attorney-in-fact through an Individual Durable Power of Attorney. *Id.*, ¶ 3. A few days later, Douglas and Cheryl discussed the money and the diamond, and Cheryl promised to return both. *Id.*, ¶¶ 40–41. Cheryl then returned to the United States and to her residence with Bethel at the property. *Id.*, ¶ 42.

On May 31, 2018, Cheryl cancelled a State Farm insurance policy on the property, which had listed Joanne, Douglas, and Cheryl as named insureds, and opened a new insurance policy on the property with Farmers Insurance, naming only herself as the insured. *Id.*, ¶¶ 54–56. On July 13, 2018, Cheryl filed a complaint against Joanne in Kitsap County Superior Court for partition of the property. *Id.*, ¶ 60. Prior to July 16, 2018, Cheryl replaced the mailbox at the property with a mailbox requiring a key, and did not provide a key to Plaintiffs or to Bethel. *Id.*, ¶ 61.

On August 10, 2018, Joanne and Douglas, for themselves and for Bethel (collectively, "Plaintiffs"), filed a complaint against Cheryl and John Does 1–10 alleging three civil violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), breach of fiduciary duty, and common law fraud. Dkt. 1. On September 13,

2018, Cheryl filed this motion to dismiss. Dkt. 8. On October 22, 2018, Plaintiffs responded. Dkt. 12. On October 26, 2018, Cheryl replied. Dkt. 13.

## II. DISCUSSION

### A. Standard

#### 1. Motion to Dismiss

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as true and construed in the light most favorable to the nonmoving party. *Everest & Jennings*, 23 F.3d at 228. To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. When deciding a motion to dismiss, the Court considers facts alleged in the pleadings, and does not consider additional allegations made in briefing. Fed. R. Civ. P. 12(d).

#### 2. RICO

Plaintiffs allege three civil violations of RICO—two violations of 18 U.S.C. 1962(c)[3] and one violation of 18 U.S.C. 1962(d). Dkt. 1. In their description of the

---
[3] While the complaint lists violations of "15 U.S.C. 1962(c)," the Court recognizes, as Plaintiffs explain in their opposition brief, that this is a typographical error. Dkt. 12 at 8 n.2.

actions and actors involved in each RICO violation, Plaintiffs fail to provide sufficient facts to support all of the required elements of their claims. Because it is not clear that Plaintiffs' claims cannot be cured by amendment, the Court will dismiss them without prejudice.

To state a claim under 18 U.S.C. 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Just Film, Inc. v. Bouno*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

An enterprise may consist of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "To show the existence of an enterprise . . . plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Properties East v. Marcus & Millchap Co.*, 731 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)). "The 'enterprise' is the actor, and the 'pattern of racketeering activity' is an activity in which that actor engages." *Odom v. Microsoft*, 486 F.3d 541, 549 (9th Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). As the Supreme Court explained in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989), "RICO's legislative history reveals Congress's intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of

continued criminal activity." Racketeering activity is defined in 18 U.S.C. 1961(1), and includes a substantial list of criminal acts, including any acts indictable under 18 U.S.C. § 1341 relating to mail fraud and 18 U.S.C. § 1343 relating to wire fraud. Fed. R. Civ. P. 9(b) requires pleadings which allege fraud to identify "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom*, 486 F.3d at 553 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).

Finally, the RICO injury element also functions as a standing requirement. "To establish standing, a civil RICO plaintiff must show: (1) that his alleged harm qualifies as an injury to his business or property; and (2) that his harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation." *Just Film, Inc.*, 847 F.3d at 1118–19 (quoting *Canyon Cty v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)). The alleged business or property interest must be "cognizable under state law." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1039, 1055 (9th Cir. 2008) (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)).

To state a claim under 18 U.S.C. 1962(d), conspiracy to violate RICO, Plaintiffs must allege "an agreement to conduct or participate in the affairs of an enterprise through a pattern of racketeering." *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir. 1982) (citing 18 U.S.C. § 1962(c); *United States v. Zemek*, 634 F.2d 1159, 1170 n.15 (9th Cir. 1980)). "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Sanford v. MemberWorks, Inc.*,

625 F.3d 550, 559 (9th Cir. 2010) (quoting *Howard v. Am. Online Inc.* 208 F.3d 741, 751 (9th Cir. 2000)).

**B.      Analysis**

    **1.      Violation of 18 U.S.C. 1962(c)**

Plaintiffs divide their two claims for violations of RICO according to the enterprise involved. One enterprise consists of Cheryl, Joanne, and Douglas ("the caregiving enterprise") to "ensure the care of Bethel." Dkt. 1, ¶¶ 1, 16. The second enterprise consists of Cheryl and the John Does ("the fraudulent enterprise"), for "the common purpose of defrauding Bethel Reese." *Id.*, ¶ 2.

    **a.      The Caregiving Enterprise**

Plaintiffs allege that while a member of the caregiving enterprise, Cheryl transferred money from an account in Bethel's name at State Farm to an account in Cheryl's name at Chase Bank. *Id.*, ¶¶ 31, 81–83. Plaintiffs allege that Cheryl accomplished this through two fraudulent acts: (1) "us[ing] the United States mails to reroute the bank statements for Bethel Reese's Certificate of deposit [sic] from the real property address where Bethel Reese resides to conceal Cheryl Smith's actions," and (2) "us[ing] the United States wires to take the funds from Bethel Reese's Certificate of Deposit and move them to a Chase Bank account naming Cheryl Smith as the sole account holder." *Id.*, ¶¶ 71–72. Plaintiffs also allege that as a member of this enterprise, Cheryl "used the United States mails and wires to cancel the State Farm rental dwelling insurance policy for the real property and seek money in return for premiums paid by Bethel Reese." *Id.*, ¶ 74. Plaintiffs fail to allege sufficient facts to plausibly support at

least three elements of their claim regarding this enterprise—the existence of an enterprise, racketeering activity, and injury.

While Plaintiffs allege that a caregiving enterprise exists, has a common purpose of caring for Bethel and has persisted since 2006, they do not explain how the enterprise, as the actor, has conducted a pattern of racketeering activity, or has any improper or illegal common purpose. *Odom,* 486 F.3d at 549 (citing *Turkette*, 452 U.S. at 583). Plaintiffs describe actions Cheryl took, but do not explain how these actions constitute the actions of the enterprise or make use of the enterprise. From the facts alleged, these actions appear to be in direct contradiction to the purpose of the enterprise, without relation to any action by the other members of the enterprise, and conducted without the knowledge or permission of the rest of the enterprise. Dkt. 1, ¶¶ 70, 75. While Plaintiffs cite the Ninth Circuit's statement in *Odom,* 486 F.3d at 548, that the definition of an enterprise "is not very demanding" and a "single 'individual' is an enterprise under RICO," nowhere in their Complaint do they allege that Cheryl as an individual is an enterprise under RICO. Moreover, Plaintiffs appear to allege this enterprise is ongoing, Dkt. 1, ¶ 81 ("Plaintiffs and Cheryl Smith have cared and continue to care for Bethel Reece"), but fail to explain how the enterprise will continue to function as an entity when two of its members are suing the third. This undermines any allegation that "the racketeering predicates . . . pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

Regarding the predicate act of mail fraud, Plaintiffs fail to allege the "specific content of the false representations as well as the identities of the parties to the

misrepresentation." *Odom*, 486 F.3d at 553. Plaintiffs allege that Cheryl changed the mailing address for the Certificate of Deposit account statements, Dkt. 1, ¶ 27, but they do not allege how she accomplished the change. They do not specify whether she changed the address through State Farm, the Postal Service, or another entity, and they do not specify what was false about the representations she made to this entity.

Regarding injury, the Complaint makes the bare allegation that "[a]s a direct and proximate result of Cheryl Smith's actions, Bethel Reese and Plaintiffs have sustained and will continue to sustain injury and damages." Dkt. 1, ¶ 85. While theft of Bethel's Certificates of Deposit would constitute an injury to Bethel, Plaintiffs alternatively describe the action as Cheryl's having stolen the funds, and as having co-mingled the funds with Cheryl's own funds. *Id.*, ¶¶ 71, 73. This lack of specificity makes it difficult for the Court to distinguish this action from a breach of fiduciary duty, particularly because Cheryl had power of attorney for Bethel during the time the transfer took place. Breach of fiduciary duty is not racketeering activity. *Manion v. Freund*, 967 F.2d 1183, 1186 (8th Cir. 1992) ("breach of fiduciary duty is not one of the specified state crimes listed in the definition of 'racketeering activity,' 18 U.S.C. § 1961(1), and thus could not have supported a civil RICO claim"). The cancellation of insurance coverage and replacement with an allegedly inferior policy naming only Cheryl as the insured is also described as an injury. Plaintiffs allege that the change "depriv[ed] Plaintiffs and Bethel Reese of all protection afforded by the policy paid for by Bethel Reece," but the only specific harm described is "less coverage" and failure to list them as named insureds. Dkt. 1, ¶ 59. Plaintiffs do not provide authority recognizing status as a named insured as a

property interest "cognizable under state law." *Diaz*, 420 F.3d at 900. Plaintiffs also provide no facts to support the allegation that Cheryl "[sought] money in return for premiums paid by Bethel Reese." Dkt. 1, ¶ 74.[4] While seeking a fraudulent refund could conceivably constitute an injury to Bethel, fraud must be alleged with particularity. *Odom*, 486 F.3d at 553.

### b. The Fraudulent Enterprise

Plaintiffs allege that while a member of an enterprise consisting of herself and John Does 1–10, Cheryl transferred money from an account in Bethel's name at State Farm to an account in Cheryl's name at Chase Bank. Dkt. 1, ¶¶ 31, 91. Plaintiffs allege that Cheryl accomplished this through two the same two fraudulent acts alleged in the first violation of RICO: (1) "us[ing] the United States mails to reroute the bank statements for Bethel Reese's Certificate of deposit [sic] from the real property address where Bethel Reese resided" and (2) "us[ing] the United States wires to take the funds from Bethel Reese's Certificate of Deposit and move them to a Chase account naming Cheryl Smith as the account holder." *Id.*, ¶¶ 92–93. Plaintiffs allege that the John Does "reside at 9235 Illahee Road NE in Bremerton, Washington" and "participated in hiding from Plaintiffs, and did intentionally hide from Plainitffs, the change of address of Bethel Reese's State Farm Certificate of Deposit account statement." *Id.*, ¶¶ 28, 30. These

---

[4] In their response to Cheryl's motion to dismiss, Plaintiffs allege that when Cheryl cancelled the insurance policy she "specifically requested" that she "be personally refunded for the unused portion of the State Farm policy although it was not paid for by her." Dkt. 12 at 10 n.6. Pursuant to Fed. R. Civ. P. 12(d), the Court will not consider allegations outside the pleadings in a motion to dismiss. Plaintiffs may include any additional allegations in an amended complaint.

allegations cover the same transfer of Certificate of Deposit funds attributed to the caregiving enterprise, and thus suffer from some of the same infirmities discussed above, including a lack of specificity regarding the mail fraud, and a failure to differentiate between theft of funds and breach of fiduciary duty.

Further, Plaintiffs' failure to show a threat of continued criminal activity, *H.J. Inc.*, 492 U.S. at 239, or show how the enterprise as the actor has conducted a pattern of racketeering activity, *Odom,* 486 F.3d at 549, is even more apparent when considering this enterprise. Plaintiffs do not allege any facts which suggest ongoing, or in fact any contact between Cheryl and the John Does. While it is *possible* that someone resides at the Illahee Road address and is cooperating with Cheryl, Plaintiffs have not provided any facts or circumstances to bring this allegation past the threshold of plausibility. *Twombly*, 550 U.S. at 557.

### 2. Violation of 18 U.S.C. 1962(d)

Because Plaintiffs have failed to adequately plead a substantive violation of RICO, their claim of a conspiracy to violate RICO must also fail. *Sanford*, 625 F.3d at 559 (citing *Howard*, 208 F.3d at 751).

In sum, Plaintiffs have failed to state a claim for violation of RICO or for conspiracy to violate RICO. Because it is possible that Plaintiffs' claims may be cured by amendment, the Court dismisses them without prejudice and with leave to amend.

## C. Common Law Claims

Cheryl's alleged theft of Bethel's wedding diamond is only alleged as a breach of fiduciary duty and common law fraud, not as a RICO violation. *See* Dkt. 1, ¶¶ 66–140.

The Court declines to address supplemental jurisdiction arguments until it has reached a final resolution of the Plaintiffs' federal claims.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' claims are **DISMISSED without prejudice** and with leave to amend. Plaintiffs may filed an amended complaint as stated herein no later than February 8, 2019.

Dated this 29th day of January, 2019.

BENJAMIN H. SETTLE
United States District Judge